**Charles Bruce SLEDD, Appellant,**

v.

**Lynzie W. GARRETT, Norma A. Landry, and James R. Mahon, Appellees.**

No. 14–02–00972–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 13, 2003.

Charles Bruce Sledd, Houston, pro se.

Scott Bounds, John J. Hightower, Houston, for appellees.

Panel consists of Justices YATES, HUDSON, and KEM THOMPSON FROST.

**OPINION**

KEM THOMPSON FROST, Justice.

In this case, the court addresses whether the affirmative defense of judicial immunity extends to members of an appraisal review board. Appellant Charles Bruce Sledd, the plaintiff below, appeals the trial court's summary judgment in favor of appellees/defendants Lynzie Garrett, Norma Landry and James Mahon, all of whom were sued for actions taken as members of the Appraisal Review Board for the Harris County Appraisal District. We affirm the trial court's judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Sledd is a property tax consultant who represents property owners protesting valuations of the Harris County Appraisal District (the "District"). He is compensated on a contingency-fee basis determined by the amount of reduction, if any, he obtains in his clients' appraised property values. Sledd represented Three Birds Property Company d/b/a John Eagle Acura (the "Property Owner") at a formal protest hearing before a three-member panel of the Harris County Appraisal Review Board (the "Board"), comprised of Garrett, Landry, and Mahon (collectively, the "Panel Members"). Sledd protested the District's appraisal of the Property Owner's property. Sledd also alleged errors in the District's valuation report and claimed the District provided insufficient documentation of its valuation. Sledd requested the Board to set the Property Owner's property value at $394,990, rather than the Board's appraised value of $2,307,190. The Panel Members did not make the drastic reduction Sledd requested, but they recommended a reduction in the appraised value of his client's property to $1,950,000. The Board then accepted this valuation. Sledd and the Property Owner did not appeal the Board's valuation of the property.

Sledd filed this claim, pro se, in district court against the Panel Members individually, seeking to hold them personally liable for their valuation of the Property Owner's property. Sledd claims the Panel Members were negligent because they ignored Texas Tax Code section 41.43, which requires the District to establish value by a preponderance of the evidence. Sledd claims this alleged negligence by the Panel Members caused him damage due to his reduced contingency fee. The trial court granted the Panel Members' motion for summary judgment, and Sledd appeals.

## II. STANDARD OF REVIEW

The trial court did not specify the grounds upon which it granted summary judgment; therefore, the judgment will be affirmed if any ground raised in the motion for summary judgment is proper. *See Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex.1989). Summary judgment is appropriate when all elements of an affirmative defense are established as a matter of law. *See Science Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex.1997). In reviewing the trial court's summary judgment, we take all evidence favorable to Sledd as true, and indulge every reasonable inference in his favor. *Id.*

## III. ANALYSIS AND DISCUSSION

In their motion for summary judgment, the Panel Members asserted the affirmative defense of judicial immunity. Although the Panel Members are not judges, the doctrine of judicial immunity has been applied to quasi-judicial officials in certain circumstances. When applied, the doctrine operates as an absolute bar to liability for acts falling within its scope. *See Bradt v. West,* 892 S.W.2d 56, 66 (Tex. App.-Houston [1st Dist.] 1994, writ denied) (holding absolute judicial immunity applies to judicial acts taken within a judge's subject-matter jurisdiction). Judicial immunity furthers the public interest in the administration of justice by allowing judicial officers to be free to act on their own convictions, without fear of personal liability. *See Stump v. Sparkman,* 435 U.S. 349, 363–364, 98 S.Ct. 1099, 1108, 55 L.Ed.2d 331 (1978). These same concerns and interests tend to support the application of judicial immunity to acts of quasi-judicial officials.

Judicial immunity applies to quasi-judicial officials who, irrespective of their title, perform functions essentially similar to those of judges, in a setting similar to that of a court. *See Butz v. Economou,* 438 U.S. 478, 511–14, 98 S.Ct. 2894, 2913–15, 57 L.Ed.2d 895 (1978) (holding that absolute judicial immunity covers judicial acts of hearing examiners and administrative law judges). To determine whether the Panel Members are entitled to judicial immunity, we examine the functions they perform to see if these functions are comparable to those of judges. *See id.,* 438 U.S. at 512–13, 98 S.Ct. at 2914–15; *Beck v. Texas State Bd. of Dental Examiners,* 204 F.3d 629, 634–36 (5th Cir.2000) (applying judicial immunity to state board of dental examiners members when they acted in a quasi-judicial role in disciplinary proceedings); *O'Neal v. Mississippi Bd. of Nursing,* 113 F.3d 62, 65–67 (5th Cir.1997) (holding state nursing board members entitled to absolute immunity because they performed quasi-judicial functions in adjudicatory hearings revoking nursing licenses); *Blue Cross Blue Shield of Texas v. Juneau,* 114 S.W.3d 126, 130–33 (Tex.App.-Austin 2003, no pet.) (holding that arbitrators are entitled to absolute immunity for acts within the scope of their duties). In *Butz,* the United States Supreme Court identified a nonexclusive list of factors for determining whether administrative officials perform quasi-judicial functions entitling them to judicial immunity:

(1) the need to assure the officials may perform their functions without harassment or intimidation;

(2) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct;

(3) insulation from political influence;

(4) the importance of precedent;

(5) the adversarial nature of the process; and

(6) the resolution of error by appeal.

*See Butz,* 438 U.S. at 512, 98 S.Ct. at 2913–14.

The Texas Tax Code establishes appraisal review boards for each appraisal district as a forum for property owners to protest appraisal-district valuations. *See* TEXAS TAX CODE §§ 6.41, 41.45. Board decisions may be appealed by the property owner to a state district court. *Id.* §§ 42.01, 42.21. In large appraisal districts such as the Harris County Appraisal District, more than three members comprise the appraisal review board; the entire Board does not sit at each protest hearing. *See id.* § 6.41(b). A panel of three members of the Board conducts the hearings and recommends a valuation to the entire Board, which then makes the final decision. *See id.* § 41.45(d).

Panel members hearing a protest have duties similar to judges. The Texas Tax Code uses judicial terminology to describe the panel members' function. For example, an appraisal review board may "sit" in panels to "conduct protest hearings." *Id.* Panel members have the power to subpoena witnesses and documents. *See id.* § 41.61(a). Like a litigant in a court proceeding, the property owner may offer sworn testimony, evidence, or argument at the hearing before the panel. *Id.* §§ 41.45(b), 41.67(a). As in judicial proceedings, adequate notice of the hearing is required as well as the opportunity to present argument or evidence to support the property owner's protest. *See id.* §§ 41.44, 41.45(b).

Panel members must be able to rule on the valuation issues that come before them free from harassment or intimidation by property owners or their representatives. Panel decisions can have a significant effect on a property owner's taxes, and the financial repercussions of such decisions could motivate disappointed property owners or their agents to seek recovery of civil damages from members of the Board. A protest hearing before panel members is an adversarial process, and the property owner's ability to appeal to the district court supports the second, third, and sixth *Butz* factors. It is undisputed that the Panel Members were acting as a panel for the Board, and that their function at the protest hearing was to adjudicate the valuation protest. Sledd sued the Panel Members for their allegedly actionable conduct as Panel Members regarding the formal protest hearing. Applying the *Butz* factors to the undisputed summary-judgment evidence, we conclude that the Panel Members perform quasi-judicial functions and that judicial immunity bars Sledd's claims against the Panel Members in this case. *See Butz,* 438 U.S. at 511–14, 98 S.Ct. at 2913–15; *Beck,* 204 F.3d at 634–36; *O'Neal,* 113 F.3d at 65–67; *Juneau,* 114 S.W.3d at 130–33; *Inwood Dad's Club v. Aldine Indep. Sch. Dist.,* 882 S.W.2d 532, 538–39 (Tex.App.-Houston [1st Dist.] 1994, no writ) (indicating that appraisal review board is quasi-judicial body).

Sledd argues the Panel Members are not entitled to judicial immunity because they do not make a final decision but only submit their recommendation to the Board for final determination. This argument lacks merit. As members of the Board, the Panel Members acted within their authority and performed their functions in deciding the appropriate valuation. In smaller appraisal districts, the entire appraisal review board hears and decides all protests, and there is no recommendation before a final determination is made. Because the appraisal district in Harris County is larger, three board members cannot hear all of the protests. The resulting recommendation procedure should not preclude judicial immunity from attaching to functions performed by panel members in larger counties when it would

otherwise attach to panels comprised of the entire board in smaller counties.

## IV. CONCLUSION

The Panel Members perform quasi-judicial functions that are protected by judicial immunity. Therefore, the trial court properly granted summary judgment in favor of the Panel Members. Because we find the Panel Members conclusively established the affirmative defense of judicial immunity, we need not address the other grounds for summary judgment. Accordingly, we overrule Sledd's issues, and we affirm the trial court's judgment.