**Affirmed and Opinion Filed November 30, 2022**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

### No. 05-20-00786-CV
_____

**AHMED ZIDAN, Appellant**
**V.**
**ALEXANDER ZIDAN F/K/A MOHAMMED ZIDAN, Appellee**

**On Appeal from the 429th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 429-02708-2018**

## MEMORANDUM OPINION

Before Chief Justice Burns, Justice Molberg, and Justice Goldstein
Opinion by Justice Molberg

Appellant Ahmed Zidan (Ahmed)[1] appeals the trial court's order denying his

TCPA[2] motion to dismiss counterclaims brought against him by his uncle, appellee

Alexander Zidan (Alex). Ahmed raises two issues, and Alex raises a cross-issue.

For the reasons below, we overrule all three issues and affirm the trial court's order.

---

[1] The parties, who share a surname, have used their first names throughout the record. We do the same.

[2] "TCPA" refers to the Texas Citizens Participation Act, which is embodied in Chapter 27 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE §§ 27.001–.011. The legislature amended the TCPA effective September 1, 2019 for actions filed on or after that date. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, § 11, 2019 Tex. Gen. Laws 684, 687. All citations to the TCPA are to the current version unless otherwise indicated.

# I. BACKGROUND

Because the facts are well known to the parties, we do not recite them here except as necessary "to advise the parties of the court's decision and the basic reasons for it." TEX. R. APP. P. 47.4.

Ahmed sued Alex in Collin County in June 2018. Two months later, Alex sued Ahmed in Harris County.

On March 26, 2020, in the Collin County case, Alex filed a pleading with counterclaims against Ahmed for tortious interference with contract and tortious interference with prospective business relations. Two weeks later, Alex amended that pleading.[3]

---

[3] Alex's tortious interference counterclaims in his amended pleading include these allegations:

145. . . . Ahmed has engaged in a pattern of sabotage, stalking and harassment, all in an effort to get Alex to buy him out at an extortion price, which is blackmail.

146. First, in December of 2017, Ahmed attempted to interfere with his relationship with the private lender, and James Chang of Ponderosa. That failed. Then on January 22nd of 2018, Ahmed made a false report with TREC regarding the Harwin project.[ ] That apparently also failed, because about a month later, on February 20, 2018, TREC stated that if Ahmed felt there was a violation, he would need to pursue it with his own counsel, and on his own. . . .

. . . .

204. It is undisputed that Alex had business relationships with James Chang and Ponderosa Land Development Company. Alex lost six real estate deals in 2018, each of which, at minimum, represents a potential business relationship.

205. Ahmed willfully interfered with Alex's contract by making a false report to [TREC]. The interference caused injury to Alex: he lost two real estate purchases on Harwin Drive, previously under contract, and suffered $112,000.00 in lost net profits. The false and malicious statements to TREC caused Alex's work performance to suffer resulting in six more lost deals in 2018, resulting in $153,756.00 in lost compensation. The same false report caused Alex to miss an increase in compensation from his employer, James Chang, a $240,000.00 loss. Because the real estate business is based largely on reputation, a false statement that impugns the reputation of a real estate professional necessarily is

Ahmed filed a TCPA motion to dismiss Alex's tortious interference counterclaims on May 5, 2020. Alex opposed Ahmed's TCPA motion.

The trial court set and reset a hearing on the TCPA motion for June 3, 2020.

Two days prior to that date, the court entered an order abating and administratively closing the Collin County case, which prompted Ahmed to file a petition for a writ of mandamus in our Court in connection with that order.

On July 15, 2020, we concluded the trial court abused its discretion by abating Ahmed's case and that the erroneous abatement of the suit constituted good cause under TCPA section 27.004(a) for extending the sixty-day deadline to hear Ahmed's motion to dismiss. *In re Zidan*, No. 05-20-00595-CV, 2020 WL 4001134, at *1, 6 (Tex. App.—Dallas July 15, 2020, orig. proceeding) (mem. op.). We conditionally granted the writ and directed the trial court to vacate its abatement order and reinstate

interference with the existing employment relationship of the professional and interference with each potential sale or lease, etc., which the profession [sic] would otherwise have secured.

206. Ahmed has willfully and tortiously interfered with Alex's existing and prospective contractual relations. Each act of interference proximately has caused injury, and Alex has suffered actual damage and loss due to Ahmed's actions. Moreover, Ahmed has also intentionally and tortiously interfered with Alex's prospective business relations. Ahmed's conduct was independently tortious and unlawful, and his interference has proximately caused Alex's injury, and Alex has suffered actual damage and loss due to his actions, including without limitation, lost profits and opportunities, and Alex sues for all such actual damages, special damages and exemplary damages, for such interferences together with any further instances of interference as are later found to exist.

207. To the extent such remedy is inconsistent, Alex pleads in the alternative and seeks from Ahmed an accounting and disgorgement of the profits, compensation, fees and other fees obtained as a result of his tortious interference.

the case on its regular docket for further proceedings, including timely disposition of Ahmed's TCPA motion within ninety days of May 5, 2020, the date of its filing. *Id*. at \*6. According to the docket sheet, the trial court considered Ahmed's TCPA motion by submission and denied it August 1, 2020. The court signed a written order denying Ahmed's TCPA motion on August 10, 2020.[4]

Ahmed timely appealed, and Alex timely cross-appealed.

## II. ISSUES AND ANALYSIS

In his two issues, Ahmed argues (1) the trial court erred in denying his TCPA motion and (2) he is entitled to attorneys' fees or other relief under TCPA section 27.009(a). *See* TEX. CIV. PRAC. & REM. CODE § 27.009(a).

In his cross-issue, Alex argues he is entitled to attorneys' fees under TCPA section 27.009(b). *See id.* § 27.009(b).

In addition to their disputes on those three issues, the parties also disagree about whether the 2019 amendments to the TCPA apply and whether we have jurisdiction over Alex's cross-issue.

### A. Whether the 2019 Amendments Apply

We turn first to the question of whether the 2019 amendments to the TCPA apply in this case. Those amendments took effect on September 1, 2019, and apply

---

[4] The August 10, 2020 order denying Ahmed's TCPA motion stated, in part, "After considering the [m]otion, the [r]esponse filed by [Alex], the pleadings, affidavits, motions and other supporting evidence . . .the Court finds that the Motion is not well taken, and is therefore DENIED, in all things." The order did not specifically grant or deny either party's request for attorneys' fees or other relief under section 27.009 but contained text, and markings striking through it, that would have awarded attorneys' fees to Alex.

"only to an action filed on or after" that date, while "[a]n action filed before [that] date is governed by the law in effect immediately before that date." *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, §§ 11–12, 2019 Tex. Gen. Laws 684, 687.

Ahmed argues the 2019 amendments do not apply because he filed this lawsuit on June 5, 2018. As support, he cites, in part, the language quoted above, *see id.*, two cases from the Texas Supreme Court,[5] and two cases from our Court.[6]

Alex, in contrast, argues the 2019 amendments apply because he first added his tortious interference counterclaims—the claims at issue in this appeal—on March 26, 2020. As support, he cites *Miller Weisbrod, L.L.P. v. Llamas-Soforo*, 511 S.W.3d 181, 193 (Tex. App.—El Paso 2014, no pet.),[7] which relied, in part, on our opinion in *Better Business Bureau of Metropolitan Dallas, Inc. v. Ward*, 401 S.W.3d 440, 443 (Tex. App.—Dallas 2013, pet. denied).

In *Ward*, the parties disputed our jurisdiction over an interlocutory appeal of an order denying a TCPA motion to dismiss. In that case, the underlying lawsuit had been filed before the TCPA's effective date, but the claims the movant sought

---

[5] *See Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 129 (Tex. 2019) ("The prior version of the [TCPA] continues . . . to control cases filed before September 1, 2019."); *In re Mem'l Hermann Hosp. Sys.*, 464 S.W.3d 686, 704 (Tex. 2015) (orig. proceeding) (noting, but not in TCPA context, it had previously equated "action" with "suit").

[6] *See Equine Holdings, LLC v. Jacoby*, No. 05-19-00758-CV, 2020 WL 2079183, at *1 n.1 (Tex. App.—Dallas Apr. 30, 2020, pet. denied) (mem. op.) ("Because this lawsuit was filed before September 1, 2019, the law in effect before September 1 applies."); *Tiegen v. Slice*, No. 05-19-00285-CV, 2020 WL 728426, at *1 n.2 (Tex. App.—Dallas Feb. 13, 2020, no pet.) (mem. op.) (stating the 2019 amendments did not apply "to this case").

[7] In *Miller Weisbrod*, the court concluded the TCPA applied to claims brought against a law firm and individual defendants in pleadings filed after the TCPA's effective date, even though the lawsuit was originally filed before that date. *Miller Weisbrod*, 511 S.W.3d at 193.

–5–

to dismiss were filed after the TCPA became effective. *Id*. Ward, the TCPA nonmovant, moved to dismiss the appeal because the TCPA motion to dismiss was not filed within sixty days of the lawsuit's filing. *Id.* We rejected Ward's argument and stated when he served the TCPA movant with an amended petition asserting his individual claims against it, the TCPA movant had sixty days from service to seek dismissal of his claims under Chapter 27 of the Texas Civil Practice and Remedies Code. *Id*. Because the TCPA movant did so, we concluded its TCPA motion was timely and we had jurisdiction over the interlocutory appeal. *Id*.

None of the parties' cited cases involve the same facts presented here, where the TCPA movant filed a lawsuit before the effective date of the 2019 amendments, the nonmovant filed counterclaims after that effective date, and the movant sought to dismiss those counterclaims.[8] But of their cited cases, *Miller Weisbrod* and *Ward* appear to involve the most analogous facts, as both involved questions regarding TCPA application to claims added after the TCPA's effective date, and both concluded the TCPA applied to those claims. *Miller Weisbrod*, 511 S.W.3d at 187, 192–93; *Ward*, 401 S.W.3d at 443.

More recently, in *Montelongo v. Abrea*, 622 S.W.3d 290, 298 (Tex. 2021), the court agreed "an amended or supplemental petition that adds new parties or new

---

[8] *Creative Oil* involved the applicability of the TCPA to a counterclaim, but the timing of that counterclaim is not clear. Considering that the supreme court's opinion was issued only three months after the 2019 amendments became effective, *see Creative Oil*, 591 S.W.3d at 127 (noting opinion was delivered December 20, 2019), the counterclaim was almost certainly filed before the effective date of the 2019 amendments, unlike in this case, where the counterclaims were filed after the effective date.

–6–

essential factual allegations does assert a new legal action and starts a new sixty-day period as to the new parties and the claims based on the new factual allegations."

We conclude the 2019 TCPA amendments apply here. In addition to *Montelongo*, *see id.*, our conclusion is in accord with decisions by some of our sister courts on similar questions.[9]

## B. Ahmed's First Issue: Denial of his TCPA Motion

Next, we consider whether the trial court erred in denying Ahmed's TCPA motion, as he argues in his first issue.

### 1. Standard and Scope of Review

Whether the TCPA applies to a legal action[10] is an issue of statutory interpretation we review de novo. *See Creative Oil*, 591 S.W.3d at 132; *Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018); *Dyer v. Medoc Health Servs., LLC*, 573 S.W.3d 418, 424 (Tex. App.—Dallas 2019, pet. denied).

---

[9] *See Sinkin & Barretto, P.L.L.C. v. Cohesion Props., Ltd.*, No. 04-20-00106-CV, 2021 WL 1649525, at *3 n.3 (Tex. App.—San Antonio Apr. 28, 2021, no pet.) (mem. op.) (applying 2019 amendments to new counterclaims filed after the amendments' effective date); *Straub v. Pesca Holding LLC*, 621 S.W.3d 299, 302–05 (Tex. App.—San Antonio Mar. 20, 2021, no pet.) (applying 2019 amendments to new claims brought against new defendant in amended pleading filed after amendments' effective date); *TV Azteca, S.A.B. de C.V. v. Trevino Ruiz*, 611 S.W.3d 24, 28–29 (Tex. App.—Corpus Christi–Edinburg 2020, no pet.) (concluding TCPA applies to new claims after TCPA's effective date when suit was filed before the effective date but nonmovant added new claims based on different facts after the effective date).

[10] The TCPA defines "[l]egal action" as "a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal, declaratory, or equitable relief" but does not include certain matters that are not at issue here, such as "(A) a procedural action taken or motion made in an action that does not amend or add a claim for legal, equitable, or declaratory relief; (B) alternative dispute resolution proceedings; or (C) post-judgment enforcement actions." *See* TEX. CIV. PRAC. & REM. CODE § 27.001(6).

As an anti-SLAPP statute,[11] the TCPA "protects citizens who petition or speak on matters of public concern from retaliatory lawsuits that seek to intimidate or silence them." *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015) (orig. proceeding).

In conducting our review, we must construe the TCPA "liberally to effectuate its purpose and intent fully." TEX. CIV. PRAC. & REM. CODE § 27.011(b); *State ex rel. Best v. Harper*, 562 S.W.3d 1, 11 (Tex. 2018). "The TCPA was designed to protect both a [nonmovant's] rights of speech, petition, and association and a claimant's right to pursue valid legal claims for injuries the [nonmovant] caused." *Montelongo*, 622 S.W.3d at 299; *see* TEX. CIV. PRAC. & REM. CODE § 27.002.

Consistent with general rules of statutory construction,[12] we ascertain and give effect to the legislature's intent as expressed in the statutory language, considering the specific language at issue and the TCPA as a whole, and we construe the statute's

---

[11] The TCPA is an anti-SLAPP statute. "SLAPP" is an acronym for "Strategic Lawsuits Against Public Participation." *Krasnicki v. Tactical Entm't, LLC*, 583 S.W.3d 279, 282 (Tex. App.—Dallas 2019, pet. denied).

[12] *Crosstex Energy Services, L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 389–90 (Tex. 2014), explains:

> If the statute is clear and unambiguous, we must read the language according to its common meaning "without resort to rules of construction or extrinsic aids." *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). We rely on this plain meaning as an expression of legislative intent unless a different meaning is supplied or is apparent from the context, or the plain meaning leads to absurd results. *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010). Words and phrases "shall be read in context and construed according to the rules of grammar and common usage." TEX. GOV'T CODE § 311.011. We presume the Legislature chose statutory language deliberately and purposefully. *See Tex. Lottery Comm'n*, 325 S.W.3d at 635. We must not interpret the statute "in a manner that renders any part of the statute meaningless or superfluous." *Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 256 (Tex. 2008) (citing *City of Marshall v. City of Uncertain*, 206 S.W.3d 97, 105 (Tex. 2006)).

words according to their plain and common meaning, unless a contrary intention is apparent from the context or unless such a construction leads to absurd results. *Dyer*, 573 S.W.3d at 424–25.

We consider, in the light most favorable to the nonmovant, the pleadings, evidence a court could consider under civil procedure rule 166a,[13] and supporting and opposing affidavits stating the facts on which the liability or defense is based. *See* TEX. CIV. PRAC. & REM. CODE § 27.006(a); *Riggs & Ray, P.C. v. State Fair of Tex.*, No. 05-17-00973-CV, 2019 WL 4200009, at *4 (Tex. App.—Dallas Sept. 5, 2019, pet. denied) (mem. op.); *Reed v. Centurion Terminals, LLC*, No. 05-18-01171-CV, 2019 WL 2865281, at *3 (Tex. App.—Dallas July 3, 2019, pet. denied) (mem. op.); *Dyer*, 573 S.W.3d at 424.

A claimant's pleadings are usually "the best and all-sufficient evidence of the nature of the action." *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017).

Under the TCPA, and subject to certain exemptions,[14] "[i]f a legal action is based on or is in response to a party's exercise of the right of free speech, right to petition, or right of association or arises from any act of that party in furtherance of the party's communication or conduct described by Section 27.010(b), that party may file a motion to dismiss the legal action[,]" TEX. CIV. PRAC. & REM. CODE § 27.003(a), and a court "shall dismiss" it, *id.* § 27.005(b). However, a court "may

---

[13] *See* TEX. R. CIV. P. 166a.

[14] *See* TEX. CIV. PRAC. & REM. CODE § 27.010(a) (listing actions to which the TCPA does not apply).

–9–

not" dismiss the legal action "if the party bringing [it] establishes by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* § 27.005(c).  Notwithstanding section 27.005(c), however, "the court shall dismiss a legal action against the moving party if the moving party establishes an affirmative defense or other grounds on which the moving party is entitled to judgment as a matter of law."  *Id.* § 27.005(d).

The TCPA provides a three-step process for the dismissal of a legal action to which it applies.  *Montelongo*, 622 S.W.3d at 296; *see Creative Oil*, 591 S.W.3d at 132; *Youngkin*, 546 S.W.3d at 679–80.  At step one, the party moving for dismissal has the burden to demonstrate the legal action is based on or is in response to the party's exercise of the right of association, right of free speech, or right to petition, or arises from any act of that party in furtherance of the party's communication or conduct described by section 27.010(b).  *See* TEX. CIV. PRAC. & REM. CODE § 27.005(b); *Montelongo*, 622 S.W.2d at 296 (discussing the three steps).

If the movant does so, the analysis proceeds to step two, where the burden shifts to the nonmovant to establish by clear and specific evidence a prima facie case for each essential element of the claim.  *See* TEX. CIV. PRAC. & REM. CODE § 27.005(c); *Montelongo*, 622 S.W.2d at 296.

If a nonmovant satisfies its burden at step two, the analysis proceeds to step three, where the movant may still win dismissal by establishing an affirmative defense or other grounds on which the moving party is entitled to judgment as a

matter of law.  *See* TEX. CIV. PRAC. & REM. CODE § 27.005(d); *Montelongo*, 622 S.W.2d at 296.  In determining whether the third step has been met, at least two of our sister courts applied a standard of review "essentially equivalent to a motion for summary judgment on an affirmative defense."  *Batra v. Covenant Health Sys.*, 562 S.W.3d 696, 708 (Tex. App.—Amarillo 2018, pet. denied);[15] *see Rosales v. Comm'n for Lawyer Discipline*, No. 03-18-00725-CV, 2020 WL 1934815, at *4 (Tex. App.— Austin Apr. 22, 2020, no pet.) (mem. op.).[16]  While they did so in cases in which the 2019 amendments did not apply, this distinction is meaningless, considering section 27.005(d)'s "matter of law" phrasing as a result of those amendments.

In light of section 27.005(d)'s phrasing under the 2019 amendments, we conclude that in TCPA cases subject to those amendments, we apply a standard of review equivalent to a motion for summary judgment on an affirmative defense.  *See* TEX. CIV. PRAC. & REM. CODE § 27.005(d) (stating, in part, "[T]he court shall dismiss a legal action against the moving party if the moving party establishes an

---

[15] *Batra* stated, "[I]n order to defeat the [nonmovant's] establishment of a prima facie claim, the [movant] must establish, as a matter of law, each essential element of at least one valid defense as to each of the [nonmovant's] claims.").  562 S.W.3d at 708.

[16] *Rosales* stated, "The standard of review employed in considering whether a movant established a valid defense so as to be entitled to dismissal is 'essentially equivalent to a motion for summary judgment on an affirmative defense,' meaning we should consider the pleadings and evidence in favor of the nonmovant, taking evidence favorable to the nonmovant as true and indulging reasonable inferences and resolving doubts in favor of the nonmovant.". 2020 WL 1934815, at *4 (quoting *Batra*, 562 S.W.3d at 708).

affirmative defense or other grounds on which the moving party is entitled to judgment as a matter of law."); *see also* TEX. R. CIV. P. 166a(c).[17]

Thus, consistent with that standard, a TCPA movant relying upon an affirmative defense for dismissal must conclusively establish that defense and, if any exceptions to the defense are pleaded by the nonmovant, the movant must also negate the pleaded exceptions. *See Velsicol Chem. Corp. v. Winograd*, 956 S.W.2d 529, 530 (Tex. 1997) (per curiam) (stating this when discussing limitations defense in summary judgment, not TCPA, context).[18]

Intertwined with and overlaying this multi-step dismissal process is the TCPA provision exempting certain actions from the TCPA's application. *See* TEX. CIV. PRAC. & REM. CODE § 27.010(a) (listing twelve exemptions under current statute); *see also Clean Energy v. Trillium Transp. Fuels, LLC*, No. 05-18-01228-CV, 2019 WL 3212145, at *3 (Tex. App.—Dallas July 9, 2019, no pet.) (mem. op.) (noting existence of four exemptions under prior version of the statute). The nonmovant bears the burden of proving exemptions.[19] No exemptions are at issue here.

---

[17] Rule 166a(c) states, in part, "The judgment sought shall be rendered . . . if [the materials allowed by the rule] show that, except as to the amount of damages, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion or in an answer or any other response." TEX. R. CIV. P. 166a(c).

[18] The court stated, "A defendant moving for summary judgment on the affirmative defense of limitations has the burden to conclusively establish that defense. When the plaintiff pleads the discovery rule as an exception to limitations, the defendant must negate that exception as well." *Velsicol Chem. Corp.*, 956 S.W.2d at 530 (citing *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 518 n.2 (Tex.1988)).

[19] *See Clean Energy*, 2019 WL 3212145, at *3; *Tervita, LLC v. Sutterfield*, 482 S.W.3d 280, 282 (Tex. App.—Dallas 2015, pet. denied).

–12–

## 2. Ahmed's Step-One Burden

As TCPA movant, Ahmed had the initial burden to demonstrate the legal action he sought to dismiss was based on or was in response to his exercise of the right of association, right of free speech, or the right to petition. TEX. CIV. PRAC. & REM. CODE § 27.005(b). In his TCPA motion, Ahmed relied on the TCPA as it existed prior to the 2019 amendments and argued Alex's tortious interference counterclaims were based on, related to, or in response to Ahmed's Texas Real Estate Commission (TREC) complaint, which Ahmed claimed constituted an exercise of his right to petition and right of free speech under the TCPA.

Alex disputed this in the trial court and in his brief on appeal. At oral argument, however, his counsel made an important concession. After noting Alex's tortious interference claims were based on two sets of communications—one consisting of Ahmed's communications to James Chang and "the Harwin investors,"[20] and the other consisting of Ahmed's complaint to the TREC—he conceded that the claims based on Ahmed's TREC complaint implicated the TCPA and shifted the burden to Alex.[21]

---

[20] To the extent Alex's claims are based on these communications, we need not consider them in this appeal, as they were not included in Ahmed's TCPA motion as a basis for dismissal. *See* TEX. R. APP. P. 33.1(a); *QTAT BPO Sols., Inc. v. Lee & Murphy L. Firm, G.P.*, 524 S.W.3d 770, 779 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) (citation omitted) (concluding argument waived when not presented in trial court and principal brief)). Courts may not apply the TCPA sua sponte. *See Torres v. Pursuit of Excellence, Inc.*, No. 05-18-00676-CV, 2019 WL 2863866, at *2 (Tex. App.—Dallas July 2, 2019, pet. denied) (mem. op.).

[21] Although we do not necessarily agree, Alex's counsel conceded Ahmed's complaint to the TREC is a petition and stated, "We are not denying that the TCPA applies to the TREC petition." He also stated that for the TREC petition, the "TCPA is implicated" and "the burden of proof shifts to Alex."

In light of that concession, we will proceed directly to step two of the TCPA analysis on claims based on Ahmed's TREC complaint. *See D Magazine Partners v. Rosenthal*, 529 S.W.3d 429, 434 (Tex. 2017) (court began with step two after noting parties did not dispute nonmovant had the burden to establish prima facie elements to avoid dismissal).

### 3. Alex's Step-Two Burden

The second step of our TCPA analysis requires us to determine whether Alex established "by clear and specific evidence a prima facie case for each essential element" of his claims for tortious interference with contract and tortious interference with prospective business relations. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(c).

To prevail on a claim for tortious interference with an existing contract, a plaintiff must establish "(1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss." *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000) (citing *ACS Inv'rs, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997)).

To prevail on a claim for tortious interference with prospective business relations, a plaintiff must establish "(1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from

–14–

occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result." *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013) (citations omitted).

The parties dispute whether Alex has satisfied his step-two burden of producing clear and specific prima facie proof on either set of elements. Ahmed argues Alex has not done so and maintains Alex's evidence is conclusory and speculative. Among other cases, he cites *Lipsky*, 460 S.W.3d at 590; *Equine Holdings*, 2020 WL 2079183, at *4; and *Van Der Linden v. Khan*, 535 S.W.3d 179, 196 (Tex. App.—Fort Worth 2017, pet. denied).

Alex argues he has satisfied his step-two burden and that his evidence is not conclusory or speculative. He notes we may consider his pleadings and the other information listed in TCPA section 27.006(a)[22] and cites *Lipsky*, 460 S.W.3d at 590–91, and *In re SSCP Management, Inc.*, 573 S.W.3d 464, 471 (Tex. App.—Fort Worth 2019, orig. proceeding) as support for his argument that only a minimum quantum of evidence is necessary to satisfy his step-two TCPA burden. As evidence, Alex cites the two affidavits and one declaration he submitted with his TCPA response.[23]

---

[22] When deciding a TCPA motion to dismiss, a court may consider "pleadings, evidence a court could consider under civil procedure rule 166a, and any supporting and opposing affidavits stating the facts on which the liability or defense is based." TEX. CIV. PRAC. & REM. CODE § 27.006(a).

[23] Alex cites the following nineteen paragraphs from his affidavits and declaration:

[From Alex's August 29, 2018 Affidavit:]

66. As I had when he was operating Lake Jackson, I began to "look in" on Legacy. I was shocked to learn that of that $200,000.00 line of credìt, all but $5,000 had been advanced over 4 months. While I didn't know this at the time, it is now apparent that my nephew took about $35,000.00 from the line of credit for himself.

69. I then told Ahmed in very clear and express language not to use the line of credit any longer. I since have learned that Ahmed continued to access the line of credit, including a withdrawal in the amount of $2,500.00 on July 21, 2016.

111. First, in December of 2017, Ahmed attempted to interfere with my relationship with George Lee, and James Chang of Ponderosa. That failed.

112. Then on January 22nd of 2018, Ahmed made a false report with TREC regarding the Harwin project. That apparently also failed, because about a month later, on February 20, 2018, TREC stated that if Ahmed felt there was a violation, he would need to pursue it with his own counsel, and on his own.

[From Alex's December 28, 2018 Affidavit:]

5. As a result of Ahmed's tortious interference, and his false and defamatory statements he made to the TREC and James Chang, I was unable to secure the purchase of the two units on Harwin, even though I had them under contract, causing $112,000 in net lost profits.

6. After Ahmed made the malicious and false statements to the TREC, my work performance suffered. I lost six deals in 2018, which resulted in $153,756.60 in lost compensation. Ahmed succeeded in severing several important business relationships and stopping my stream of income.

7. Also as a result of Ahmed's false, malicious and defamatory statements, specifically to my employer, James Chang, I was unable to secure my increase in compensation. This resulted in $240,000 loss in compensation.

8. Ahmed's actions have caused me mental anguish, chronic physical pain, emotional distress, loss of appetite, sleep disturbances, and anxiety. I have sought medical attention and have been prescribed medication to deal with these problems caused by Ahmed.

9. I have retained the law firm of Hirsch & Westheimer, P.C. to represent me, Prime United, Legacy, and Lake Jackson, and try to recoup the money Ahmed stole. I have agreed to pay Hirsch & Westheimer, P.C. reasonable and necessary attorneys' fees incurred in connection with the prosecution of this matter and the defense of Ahmed's harassing and wrongful suit in Collin County.

[From Alex's May 13, 2020 declaration:]

6. In April of 2015, I discussed with Ahmed his interest in having a bigger role in the Kwik Kar operations at Lake Jackson. I told him that his involvement would be contingent on whether I won a contract to do a project on Harwin, in Houston, Texas, that was still in

–16–

negotiations at that time, and if I was successful, it would take most of my time. I asked him to take his time and think hard before he made his decision.

7. In May of 2015, I "won" the Harwin Project contract, and signed a Consulting and Fee Agreement with 7636 Harwin, LLC, by which I was engaged as an independent contractor to manage certain development, construction, operations, management, and maintenance of a development known as the Harwin International Plaza, located at 7636 Harwin Drive, Houston, Texas 77036 (the "Harwin Project"). At that time, I expected that I would be paid more than a million dollars over the lifetime of that consulting agreement.

8. At around that point, Ahmed became more involved in the operations of the Lake Jackson Kwik Kar location.

9. Ahmed at all times was aware of the scope of my engagement with 7636 Harwin, LLC, as well as the scope of services I provided to 7636 Harwin, LLC. There were many instances in which Ahmed accompanied me to the site of the Harwin Project and was present when I performed consulting services. I would talk to Ahmed about the Harwin Project, frequently.

10. On November 22, 2017, I formally suspended Ahmed from overseeing operations with Prime United, including the Lake Jackson Kwik Kar location. Since then, Ahmed has engaged in a pattern of sabotage, stalking and harassment, all in an effort to get me to buy him out at an extortion price, which is blackmail.

11. Two weeks after he was suspended, Ahmed emailed James Chang and other investors in the Harwin Project, falsely claiming that I had tried to trick his mother into executing an Assignment and Assumption Agreement. That email was then forwarded by one of the investors to George Lee, my mentor, and three other investors, as well as James Chang, asking "James, Please explain what's the story regarding Alex and unit 301-302." James Chang, immediately forwarded that email to me, stating, "FYI below."

12. Then, a month later, Ahmed made a false report with the Texas Real Estate Commission (the "TREC"). Among other things, Ahmed falsely represented to the TREC that I was engaged in unlicensed real estate brokerage activity relating to the Harwin Project. At all times, Ahmed knew that I had been retained by the owner of the Harwin Project to handle management and operations of the Harwin Project, and that none of such duties meet the scope or definition of "real estate brokerage activities." Ahmed was a licensed sales agent, and he knew better. Also, Ahmed falsely claimed that I used his name and likeness to conduct real estate transactions in his name, claiming that "Alex Zidan" was actually his name, and not mine. That also was false. Because Ahmed implicated the Harwin Project, and identified James Chang as a witness, I was required to disclose to James Chang, President of Ponderosa Land Development Company, the report. Moreover, because James Chang, who is a licensed attorney, was identified as a witness by Ahmed, he had to participate in the investigation, including providing written statements denying that I was engaged in activities in violation of the Real Estate License.

14. Ahmed knew the statements he made in his emails to the Harwin Project investors and the TREC were false. Ahmed made these allegations to hurt me and damage my income stream, as part of his efforts to create leverage against me in our ongoing litigation.

–17–

We quoted above the pertinent portions from Alex's pleading, two affidavits, and declaration. Based on those items, and particularly in light of the additional information provided in Alex's May 13, 2020 declaration, we conclude Alex's evidence satisfies his step-two burden because his evidence supports a rational inference that the prima facie elements of his tortious interference claims are true. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(c); *Lipsky*, 460 S.W.3d at 592–93 (prima facie evidence is minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true).

## 4. Ahmed's Step-Three Burden

Next, we consider whether Ahmed met his step-three burden on the two defenses he relies upon: limitations and privilege.[24]

Ahmed argues he did so by establishing both defenses by a "preponderance of the evidence," but this is not the correct standard under the 2019 amendments,

---

15.     Although I was cleared of any wrongdoing by the TREC, Ahmed's actions raised a spectacle with the Harwin Project investors, ultimately resulting in the termination of my consulting agreement with 7636 Harwin, LLC. If Ahmed had not made the false report to the TREC, and had not sent that email to the Harwin Project Investors, I would still have my contract on the Harwin Project. In addition to the loss of no less than one million dollars in earnings on the Harwin Project, I also lost the opportunity to join the Harwin Project investors in other lucrative deals.

16.     Moreover, during the period of the TREC investigation, I was unable to participate in many aspects of my consulting role on the Harwin Project, including the sale of seven units which had been under contract, which is an additional loss of no less than $112,000 in net profits.

[24] Throughout his briefing, Ahmed refers to privilege and immunity together as one concept.

which require him to establish these defenses as a matter of law.  *See* TEX. CIV. PRAC. & REM. CODE § 27.005(d).

As explained above, we apply a standard of review equivalent to a motion for summary judgment on an affirmative defense, which requires Ahmed to conclusively establish these defenses and to negate any exceptions pleaded by Alex. *See id.*; *Velsicol Chem. Corp.*, 956 S.W.2d at 530.

### a.  Limitations and Tolling

We first consider whether Ahmed established his limitations defense as a matter of law.  Both in the trial court and in his brief on appeal, Ahmed argued Alex's claims are barred by a two-year statute of limitations[25] because Alex's pleading and affidavit reflect Alex's claims are based on events in December 2017 and on January 22, 2018, more than two years before he filed his counterclaims in this case.[26]

Without disputing a two-year statute of limitations applies or that his claims are based on events more than two years before he filed his counterclaims in this

---

[25] *Agar Corp., Inc. v. Electro Circuits International, LLC*, 580 S.W.3d 136, 143 (Tex. 2019), stated:

> In *First National Bank of Eagle Pass v. Levine*, we held section 16.003 governs tortious interference claims. 721 S.W.2d 287, 289 (Tex. 1986). And in *Wal-Mart Stores, Inc. v. Sturges*, we held that tortious interference with business relations requires proving that the defendant's conduct would be actionable under another recognized tort. 52 S.W.3d 711, 726 (Tex. 2001). *Levine* and *Sturges* combined suggest that 16.003's two-year limitation can govern claims that depend on other underlying tortious actions, like tortious interference and civil conspiracy.  But we have held this is not the case. In *Nath v. Texas Children's Hospital*, we held that only a one-year statute of limitations applies to tortious interference claims where a one-year tortious act is the only grounds for the claim. 446 S.W.3d 355, 370 (Tex. 2014).

[26] He quotes portions of Alex's pleading stating, "[I]n December of 2017, Ahmed attempted to interfere with [Alex's] relationship with the private lender, and James Chang of Ponderosa.  That failed.  Then on

–19–

case, Alex argued the limitations period was tolled by various means, including under sections 16.063, 16.064, and 16.068 of the civil practice and remedies code[27] and through equitable tolling, which he argues applies here because he timely filed the same tortious interference counterclaims in the Harris County lawsuit. Ahmed disputes limitations have been tolled through any of these means but does not appear to dispute Alex timely filed the same tortious interference claims in the Harris County lawsuit.

Both parties cite *Hand v. Stevens Transportation, Inc. Employee Benefit Plan*, 83 S.W.3d 286, 293 (Tex. App.—Dallas 2002, no pet.), as outlining the factors to be considered in determining whether to apply equitable tolling in a given case, which include: "(1) lack of actual notice of filing requirement; (2) lack of constructive knowledge of filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the notice requirement." On the record before us, we conclude Ahmed

---

January 22nd of 2018, Ahmed made a false report with TREC regarding the Harwin project." Alex's affidavit contains similar statements.

[27] *See* TEX. CIV. PRAC. & REM. CODE § 16.063 ("Temporary Absence from State"); *id*. §16.064 ("Effect of Lack of Jurisdiction"); *id*. § 16.068 ("Amended and Supplemental Pleadings").

failed to satisfy his step-three burden as to limitations because equitable tolling applies here,[28] and we need not consider Alex's other tolling arguments as a result.

### b. Privilege

Next, we consider whether Ahmed has established as a matter of law his affirmative defense of privilege. Ahmed argues his TREC report was made in a quasi-judicial proceeding and is protected by an absolute privilege. As support, he cites, among other cases, *Shell Oil v. Writt*, 464 S.W.3d 650 (Tex. 2015), and *Senior Care Resources, Inc. v. OAC Senior Living, LLC*, 442 S.W.3d 504 (Tex. App.— Dallas 2014, no pet.).

Alex disputes this and argues the privilege (1) does not apply to the other set of communications upon which Alex's tortious interference claims are based; (2) applies only to claims in which reputational damages are sought, which he denies seeking; and (3) is qualified, not absolute, and is capable of being defeated by evidence of malice—the absence of which Ahmed had to prove, according to Alex.

Because any claims based on any communications other than Ahmed's TREC report are not before us, we need not consider Alex's first argument that no privilege

---

[28] *See Bailey v. Gardner*, 154 S.W.3d 917, 920 (Tex. App.—Dallas 2005, no pet.) ("Equitable tolling applies in situations where a claimant actively pursued his judicial remedies but filed a defective pleading during the statutory period, or where a complainant was induced or tricked by his adversary's misconduct into allowing filing deadlines to pass.") (citation omitted). While there is no indication Ahmed induced or tricked Alex into allowing any filing deadline to pass, there is also no dispute that Alex actively pursued his judicial remedies during the statutory period by timely filing his tortious interference claims in the Harris County case—a case that was then the subject of a dispute over which court had dominant jurisdiction and that was appealed to the First District Court of Appeals before being abated to allow the proceedings in this case to advance. Under the unique circumstances before us, we conclude equitable tolling applies.

applies to such communications. We reject Alex's second argument because, even if it were clear he seeks no relief based on reputational harm as he asserts,[29] the case Alex cites as support, *Bird v. W.C.W.*, 868 S.W.2d 767 (Tex. 1994), does not limit the application of the privilege as Alex suggests. *See McIntyre v. Wilson*, 50 S.W.3d 674 (Tex. App.—Dallas 2001, pet. denied) (concluding *Bird*'s analysis was simply made in the context of the specific proceeding and stating any analysis regarding defamation-type damages did not restrict its statement of law).

We turn, then, to the parties' principal disputes regarding privilege—whether it is absolute or qualified, and whether Ahmed has established it as a matter of law. In *Marble Ridge Capital, LP v. Neiman Marcus Group, Inc.*, 611 S.W.3d 113, 128–36 (Tex. App.—Dallas 2020, pet. dism'd), we discussed the history and effect of the judicial-proceedings privilege, an absolute privilege that applies to communications made in the course of a judicial proceeding, and from which other well-settled rules of law have developed.

In *Shell Oil*, which both parties cite and we discussed in *Marble Ridge*,[30] the supreme court stated, "In Texas, the absolute privilege is also extended to quasi-judicial proceedings and other limited instances in which the benefit of the communication to the general public outweighs the potential harm to an individual."

---

[29] This assertion is belied by paragraph 205 of his own pleading.

[30] *See Marble Ridge*, 611 S.W.3d at 128–29, 133–34 (discussing *Shell* in context of deciding whether privilege applied to communications preliminary to a judicial proceeding, a matter not before us here).

464 S.W.3d at 655 (citation omitted). Also, many years before *Shell*, the supreme court stated, "The rule that communications uttered or published in the course of a judicial proceeding are absolutely privileged, applies to proceedings before executive officers, and boards and commissions which exercise quasi-judicial powers." *Reagan v. Guardian Life Ins. Co.*, 166 S.W.2d 909, 912 (Tex. 1942).

In *Watson v. Hardman*, we stated, "The general rule is that communications made in the course of judicial or quasi-judicial proceedings are protected by an absolute privilege." 497 S.W.3d 601, 608–09 (Tex. App.—Dallas 2016, no pet.) (citations omitted) (noting claimants' contention that the privilege is conditional is incorrect).

Similarly, in *Tervita*, 482 S.W.3d at 285, we concluded a defendant's communications in a quasi-judicial proceeding were absolutely privileged and noted, "Any communication, even perjured testimony, made in the course of a judicial proceeding, cannot serve as the basis for a suit in tort.") (citations omitted).

Ahmed argues, and Alex does not dispute, that Ahmed's TREC report was made in a quasi-judicial proceeding. The TREC is a legislatively created commission with the power to investigate, decide, and impose administrative

penalties regarding various violations, including unlicensed real estate brokerage activity as Ahmed reported.[31]

> In *Smith v. Cattier*, a special appearance case, we explained,
>
> > A party who makes any communication, oral or written, in the course of a judicial, quasi-judicial, or legislative proceeding is entitled to the defense of absolute immunity notwithstanding the actor's motivation in making the statement. *See Hurlbut v. Gulf Atl. Life Ins. Co*., 749 S.W.2d 762, 768 (Tex. 1987); *Reagan v. Guardian Life Ins. Co*., 140 Tex. 105, 111, 166 S.W.2d 909, 912 (1942); *see also Shanks v. AlliedSignal, Inc.*, 169 F.3d 988, 993 (5th Cir. 1999) (applying Texas law).

*See* No. 05-99-01643-CV, 2000 WL 893243, at *4 (Tex. App.—Dallas July 6, 2000, no pet.) (mem. op.) (not designated for publication). But we also explained:

> > Absolute immunity does not extend to 'unsolicited communications to law enforcement officials' or 'initial communications 'to a public officer . . . who is authorized or privileged to take action.' *Shanks*, 169 F.3d at 993 (citing *Hurlbut*, 749 S.W.2d at 768). Under those circumstances, the actor is entitled to only a qualified privilege which may be lost if the defendant's actions are motivated by malice. *Shanks*, 169 F.3d at 993; *Hurlbut*, 749 S.W.2d at 768; *see Zarate v. Cortinas*, 553 S.W.2d 652, 655 (Tex. Civ. App.—Corpus Christi[–Edinburg] 1977, no writ).

*Id*.

When applying those standards in *Smith*, we concluded the defendant, Cattier, did not establish he was entitled to absolute immunity because he failed to negate Smith's claim in his petition that Cattier made statements to criminal investigators

---

[31] *See* TEX. OCC. CODE § 1101.204 (TREC or its staff may conduct investigation as necessary to enforce chapters 1101, 1102, or a rule adopted under those chapters); *id*. § 1101.351(a)(1) (unlicensed person may not act as or represent that the person is a broker or a sales agent); *id*. § 1101.701 (TREC may impose administrative penalty on person who violates chapter or rule adopted or order issued by TREC under chapter); *Senior Care*, 442 S.W.3d at 515 (listing factors to determine if quasi-judicial power exists).

and "initiated, procured, and caused" the commencement of the criminal investigation into Smith's actions. *Id.*

Ahmed faces the same problem here. Alex's pleading asserts Ahmed made the TREC report, and Ahmed has provided no proof conclusively establishing his report was anything other than unsolicited. Thus, on these facts, we conclude Ahmed has failed to establish he is entitled to an absolute privilege. *See id.*

Alternatively, Ahmed argues his TREC report is protected by a qualified privilege. Alex disputes Ahmed has established a qualified privilege as a matter of law on this record. In *Hurlbut*, which we cited in *Smith*, the supreme court stated:

> All communications to public officials are not absolutely privileged. *Zarate v. Cortinas*, 553 S.W.2d 652 (Tex. App.—Corpus Christi[–Edinburg] 1977, no writ). The occasion of [the defendant's] communication to the [public official] in this case is best analogized to the conditional privilege described in section 598 of the Restatement, "Communication to One Who May Act in the Public Interest:" . . . .
>
> A conditional privilege is defeated when the privilege is abused. *Id.* § 599. Abuse may be found when the person making the defamatory statement knows the matter to be false or does not act for the purpose of protecting the interest for which the privilege exists. *Id.* §§ 600–603. The distinction between absolute and conditional privileges significant to our present case is that an absolute privilege confers immunity regardless of motive whereas a conditional privilege may be lost if the actions of the defendant are motivated by malice.

*Hurlbut*, 749 S.W.2d at 768.[32]

---

[32] In *Shell Oil*, the court applied *Hurlbut*'s principles and refused to overrule it, but found an absolute privilege existed based on the particular circumstances in that case, which are distinguishable from those here. *See Shell Oil*, 464 S.W.3d at 654–60 (involving Shell Oil's communications to the U.S. Department of Justice (DOJ) in response to communications the DOJ initiated and noting that, at all relevant times, Shell was a target of the DOJ's investigation, while Gulf—the party whose statements were at issue in

Citing *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995), as support, Alex argues Ahmed was required to prove the absence of malice in order to establish as a matter of law his privilege defense. Ahmed disagrees but concedes that in a motion for summary judgment, a party asserting a privilege that can be defeated by a showing of actual malice would need to show an absence of actual malice. *See Hanssen v. Our Redeemer Lutheran Church*, 938 S.W.2d 85, 92–93 (Tex. App.—Dallas 1996, writ denied) (citing, in part, *Jackson v. Cheatwood*, 445 S.W.2d 513, 514 (Tex. 1969) (per curiam)).

Based on Ahmed's mistaken position that the 2019 amendments do not apply here, he argues he is only required to establish a defense by a preponderance of the evidence, that a summary judgment standard does not apply, and that Alex had the burden to prove actual malice to defeat Ahmed's privilege. Based on *Jackson*, *Hanssen*, and the "matter of law" standard in section 27.005(d),[33] we agree with Alex that Ahmed was required to prove the absence of malice to establish his qualified privilege. Because he has failed to do so, we conclude Ahmed failed to satisfy his burden of establishing as a matter of law that Alex's claims are barred by privilege.

---

*Hurlbut*—was not). In this respect, Ahmed's TREC report is unlike the DOJ report in *Shell Oil* and is more similar to the defendant's statements to the attorney general in *Hurlbut*, which the Texas Supreme Court concluded were not subject to an absolute privilege. We disagree with the dissent's view that Ahmed's TREC report is absolutely privileged for a number of reasons, but among them is our view that the dissent's conclusion effectively repeats the same mistake this Court made in *Hurlbut*, a mistake the Texas Supreme Court reversed. *See Hurlbut*, 749 S.W.2d at 767–69 (reversing our judgment and disagreeing with our earlier conclusion that Gulf's statements to the attorney general were absolutely privileged).

[33] *See* TEX. CIV. PRAC. & REM. CODE § 27.005(d).

Moreover, Ahmed's expansive reading of the privilege is also unjustified, as it would necessarily displace any action based on wrongful prosecution, such as actions for malicious prosecution. Also, even if the burden were not on Ahmed, the evidence put forth by Alex is nevertheless sufficient to raise a fact issue on whether Ahmed's actions were malicious.

We overrule Ahmed's first issue.

## C. Ahmed's Second Issue: Relief under Section 27.009(a)

In his second issue, Ahmed argues he is entitled to recover various relief under section 27.009(a), including, but not limited to, attorneys' fees and sanctions. *See* TEX. CIV. PRAC. & REM. CODE § 27.009(a)(1)–(2). The parties' briefing on this issue is sparse, and neither party discussed the issue in oral argument. In his main brief, Ahmed includes only a single paragraph on this issue, which states, in its entirety:

> As the tortious interference counterclaims should have been dismissed, Ahmed is entitled to recover his "court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require." TEX. CIV. PRAC. & REM. CODE § 27.009(a)(1). Ahmed is also entitled to recover "sanctions against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions described in this chapter." *Id*. § 27.001(a)(2). As set forth above, these awards are mandatory. Ahmed will provide evidence of his attorney's fees.

Alex did not respond to this issue in his brief, and Ahmed did not refer to the issue in his reply brief.

In light of our conclusion on Ahmed's first issue, there exists no basis upon which to award Ahmed relief under section 27.009(a), when no legal action has been dismissed under the TCPA. *See* TEX. CIV. PRAC. & REM. CODE § 27.009(a).

We overrule Ahmed's second issue.

**D.     Alex's Cross-Issue:  Relief under Section 27.009(b)**

In his cross-issue, Alex argues he is entitled to attorneys' fees under TCPA section 27.009(b). *See id.* § 27.009(b). Ahmed disputes this and argues we lack jurisdiction to consider this cross-issue in this interlocutory appeal.

We conclude we have interlocutory jurisdiction to consider Alex's cross-issue. In *Weller v. MonoCoque Diversified Interests, LLC*, No. 03-19-00127-CV, 2020 WL 3582885, at *4 (Tex. App.—Austin July 1, 2020, no pet.) (mem. op.), our sister court exercised interlocutory jurisdiction in a similar context, based in part on the supreme court's decision in *D Magazine*, 529 S.W.3d at 441.

In *D Magazine*, the Texas Supreme Court concluded an appellate court had interlocutory jurisdiction to consider whether a trial court erred in denying an attorneys' fees award to a TCPA movant in an order granting in part and denying in part a TCPA motion. *Id.* The court stated, "The trial court issued a single order that partially denied [the movant's] motion to dismiss, including its request for attorney's fees, and [the movant] was entitled to an interlocutory appeal of that order." *Id.* (citing TEX. CIV. PRAC. & REM. CODE § 51.014(a)(12)).

The situation in *Weller* was somewhat different and is akin to the situation in this case. Similar to the parties' positions here, in *Weller*, in a cross-issue, the successful TCPA nonmovant sought interlocutory review of the trial court's denial of attorneys' fees under section 27.009(b) in an order denying the TCPA motion to dismiss, and the TCPA movant argued the appellate court lacked jurisdiction to decide that issue. *See Weller*, 2020 WL 3582885, at *4. After noting the case presented a slightly different posture than in *D Magazine*, the court determined it would consider the nonmovant's cross-appeal in light of *D Magazine*, the language of section 51.014(a)(12)[34] and TCPA section 27.008(b),[35] and in the interest of judicial economy. *See Weller*, 2020 WL 3582885, at *4. We do so here as well.

As to the merits of Alex's cross-issue, we disagree he is entitled to relief under TCPA section 27.009(b), which states, "*If the court finds that a motion to dismiss filed under this chapter is frivolous or solely intended to delay*, the court *may* award court costs and reasonable attorney's fees to the responding party." TEX. CIV. PRAC. & REM. CODE § 27.009(b) (emphasis added). The trial court made no such finding, and even if it had done so, as *Weller* noted,[36] an award was within the trial court's

<hr/>

[34] *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(12) (a person "may appeal from an interlocutory order . . . that denies a motion to dismiss" under the TCPA).

[35] *See* TEX. CIV. PRAC. & REM. CODE § 27.008(b) ("appellate court shall expedite an appeal . . . from a trial court order on a motion to dismiss a legal action under Section 27.003").

[36] *Weller*, 2020 WL 3582995, at *5 (noting trial court did not find the TCPA motion was frivolous or was solely intended to delay and stating, "[E]ven if the record contained such findings, the trial court still had the discretion to decide whether to award [the nonmovant] any attorney's fees."). The court also noted that, after the trial court signed its order, the TCPA nonmovant "did not complain to the trial court about its failure to make explicit findings as to whether the motion to dismiss was frivolous or solely intended to

discretion and was not mandatory. *See* TEX. CIV. PRAC. & REM. CODE § 27.009(b); TEX. GOV'T CODE § 311.016(1)–(2) (under Code Construction Act, general rule is that "'[m]ay' creates discretionary authority or grants permission or a power" and "'[s]hall' imposes a duty").

We overrule Alex's cross-issue.

### III. CONCLUSION

Having overruled the parties' three issues, we affirm the trial court's order denying Ahmed's TCPA motion.

200786f.p05

/Ken Molberg/
KEN MOLBERG
JUSTICE

Goldstein, J., dissenting.

---

delay." *Id.* Because the trial court did not make, and the nonmovant did not seek, the required findings that could support attorneys' fees under section 27.009(b), our sister court declined to make those findings as a matter of law and declined to hold that the trial court abused its discretion in not awarding attorneys' fees to the nonmovant. *Id.*



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

AHMED ZIDAN, Appellant

No. 05-20-00786-CV     V.

ALEXANDER ZIDAN F/K/A
MOHAMMED ZIDAN, Appellee

On Appeal from the 429th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 429-02708-
2018.
Opinion delivered by Justice
Molberg. Chief Justice Burns and
Justice Goldstein participating.

In accordance with this Court's opinion of this date, the trial court's order denying appellant Ahmed Zidan's TCPA motion to dismiss is **AFFIRMED**.

It is **ORDERED** that appellee ALEXANDER ZIDAN F/K/A MOHAMMED ZIDAN recover his costs of this appeal from appellant AHMED ZIDAN.

Judgment entered this 30th day of November, 2022.